## GILES et al. v. GILES.

### No. 8007.

Court of Civil Appeals of Texas. Austin.

April 8, 1936.

Rehearings Overruled May 6, 1936.

Greenwood, Moody & Robertson, of Austin, for appellants.

Harris & Harris, of Austin, for appellee.

BAUGH, Justice.

Suit by appellants against appellee upon a vendor's lien note executed by appellee and payable to L. B. Giles, father of appellants and of appellee. Trial was to a jury, but at the close of the evidence the case was withdrawn from the jury and judgment rendered in favor of the defendant, appellee here, from which the plaintiffs have appealed.

The case arose as follows: B. C. Giles, a bachelor, and L. B. Giles were brothers. L. B. Giles had four children, all of whom are parties to this suit. In January, 1899, B. C. Giles sold and conveyed to Banton W. Giles, his nephew, 180 acres of land in Travis county, the deed thereto reciting the following consideration: (1) $200 cash paid; (2) a $1,100 note due in three years; (3) payment by Banton W. Giles to B. C. Giles of $336 annually on December 1st during the latter's natural lifetime; and (4) "the sum of nineteen hundred ($1,900) dollars to be paid by the said Banton W. Giles to my brother Leonidas B. Giles, said sum to be due one year after my death, and to bear no interest until maturity, the obligation to pay which is also evidenced by a nonnegotiable promissory note of even date herewith from the said Banton W. Giles to the said Leonidas B. Giles, which is also. secured by a vendor's lien on this land."

The deed was delivered to B. W. Giles and by him duly recorded in the deed records of Travis county, on January 30, 1899. The $1,900 note was signed by B. W. Giles and delivered to B. C. Giles, but was never by him delivered to L. B. Giles. Nor did L. B. Giles, the brother of the grantor, have any interest in the land or know anything about the transaction until long after it occurred. The note in question has been lost. or destroyed. B. C. Giles died intestate on July 30, 1922. L. B. Giles died intestate on July 10, 1922. Under its terms the note in question thereupon became due on July 30, 1923. B. C. Giles had lived with and been taken care of by his nephew, B. W. Giles, who signed said note, from 1894 to the time of his death in 1922, a period of some 29 years, and was paid the annuities in said deed provided.

Prior to his death in 1922, B. C. Giles, by an instrument in writing, which recited that L. B. Giles had no interest in said land; that the $1,900 note was but a gift by will, "and was not intended as an absolute transfer of the note"; and that I "hereby revoke the will made by giving the said note to Leonidas B. Giles in the deed above mentioned," executed and delivered to B. W. Giles a complete release of the note and lien here involved. The trial court concluded that there was no delivery of the note in question to L. B. Giles; that such delivery was essential to effectuate a gift of the note and lien to L. B. Giles; and that therefore B. C. Giles, who retained such note in his possession, custody, and control, had the right and power to release it.

Appellee also pleaded that at the time the deed and note were executed it was contemplated that the remaining life expectancy of B. C. Giles would be seven years; and that there was then made a parol agreement between B. W. Giles and B. C. Giles that if B. C. Giles should live for a longer period than seven years, then that the $1,900 note should be credited each year, after the expiration of such seven-year period, with the $336 annual payments made by B. W. Giles to him, and if such payments continued for a sufficient period of time before the death of B. C. Giles to discharge the $1,900 note, then that B. C. Giles would release it.

The contentions here made were raised by objections to the testimony as to such parol agreement, on the ground that it was an attempt to vary the terms of written instrument by a contemporaneous parol agreement; and also to the introduction by appellee of the release executed to him by B. C. Giles, on the ground that B. C. Giles had no authority to release said note without the consent of the payee, L. B.

Giles. The latter question depends upon whether there was a completed gift of the note and lien in question. If not, the release by B. C. Giles, the donor, was effective in any event and the parol agreement pleaded becomes immaterial.

██ It is appellee's contention, and the view taken by the trial court, that the note not having been delivered to L. B. Giles but kept in the possession of B. C. Giles, such asserted gift was never effectuated and title to it never passed to L. B. Giles, citing and relying particularly on the case of Montgomery v. Montgomery (Tex.Civ. App.) 54 S.W. 414; Bledsoe v. Fitts, 47 Tex.Civ.App. 578, 105 S.W. 1142; Hawkins v. Cramer, 63 Tex. 99; and Harmon v. Schmitz (Tex.Com.App.) 39 S.W.(2d) 587. The case of Bledsoe v. Fitts, though discussing the essential elements of a gift, was decided on the ground that under the statute a wife, because of her coverture, could not make a valid gift of her personal property without the knowledge or consent of her husband. That of Hawkins v. Cramer, in effect, on the ground that a gift could not be valid where made for the purpose of defrauding creditors. Obviously, these cases are not applicable to the question here presented. In the Harmon v. Schmitz Case, by the Commission of Appeals, the essential elements and conditions to render valid a gift inter vivos are fully set out. In that case also the element of bona fides was obviously lacking. No question of fraud or bona fides is present in the instant case. To constitute such a gift inter vivos, the general well-established rule is that there must be a clear intent on the part of the donor to make such gift, accompanied by a present delivery either actual or constructive, of the property, of such character as to divest the donor of the title, dominion, and control over it, and an acceptance by the donee. The delivery, however, may be constructive, and need not necessarily be an actual physical delivery of the subject-matter of the gift. As relates to gifts of "goods or chattels," article 3998, R.S., controls. But the obligation here involved does not come within the purview of this statute. Cowen v. National Bank, 94 Tex. 547, 63 S.W. 532, 64 S.W. 778; Brown v. Fore (Tex.Com. App.) 12 S.W.(2d) 114, 63 A.L.R. 435.

██ But the result of the transactions here involved, that is, the execution by B. C. Giles of the deed, and by B. W. Giles of the note, was not to create an obligation in favor of B. C. Giles which he might thereafter give or deliver to L. B. Giles; but same created in and of itself an obligation in praesenti in favor of L. B. Giles himself. If the note signed by B. W. Giles had been payable to B. C. Giles, and he had intended to make a gift of it to L. B. Giles in futuro, then a different question would be presented. But when B. C. Giles executed the deed providing that a part of the consideration therefor be paid to L. B. Giles, this was tantamount to a written assignment to L. B. Giles of that part of the purchase price thereafter to be paid to L. B. Giles, and became conclusive evidence of his intention to do so. When B. W. Giles signed said note, payable to L. B. Giles, and delivered it to B. C. Giles, the delivery was complete. B. C. Giles thereupon held such note, not as his own property, but as trustee for the payee thereof, L. B. Giles, in whom the record title thereto, when such deed was recorded, was shown to vest. B. W. Giles' obligation, clearly binding on him, was to pay L. B. Giles not B. C. Giles. Consequently, without the consent or acquiescence of L. B. Giles, B. C. Giles had no authority to thereafter cancel or release the debt due to L. B. Giles. By his voluntary action, and by his written instrument, he placed said obligation beyond his power to revoke without the consent of the payee. The debt was established and the lien retained to secure it by virtue of the execution and delivery of the deed itself; and the note was but evidence of the debt. That debt by virtue of the deed became due to L. B. Giles as a primary obligation of B. W. Giles to him. The fact that it did not mature until one year after the death of B. C. Giles only fixes its due date and does not alter its character.

██ Some cases hold that recording a mortgage given to secure a note which is at the instance of the donor made payable to the donee, but retained by the donor and never delivered to the donee, does not in itself constitute such delivery to the donee as to vest title in him. This was true in the case of Montgomery v. Montgomery, supra. But in case of a mere personal note, the mortgage does not evidence the debt. It merely secures the note, which is sustained by a different consideration. The rights or title here involved arose out of the deed itself, and to the extent of the purchase money made payable to L. B. Giles would, we think, be con-

trolled by the same considerations as if B. C. Giles had conveyed by deed to L. B. Giles as a gift an interest in the land itself to that extent. The registration of a deed is prima facie evidence of delivery, and where a deed is delivered to one other than the grantee for the purpose of registration, and the purpose of the grantor is carried out by recording the deed, the title passes to the grantee and the grantor cannot thereafter be heard to deny it. The title passes beyond his control and he cannot thereafter revoke it. Henry v. Phillips, 105 Tex. 459, 151 S.W. 533; Taylor v. Sanford, 108 Tex. 340, 193 S.W. 661, 5 A.L.R. 1660. In the instant case the deed to B. W. Giles, which embodied in it the gift to L. B. Giles, was delivered to B. W. Giles with full knowledge of B. C. Giles that it would be recorded and that it provided a gift of a part of the purchase price for the land to L. B. Giles. This we think as a matter of law constituted a constructive delivery of such purchase price to L. B. Giles, vesting in him an unconditional right thereto, irrevocable in character, and one which could not be destroyed without his consent. The subsequently executed release by B. C. Giles was therefore of no force and effect. We find no Texas cases involving the identical issue here presented, but the courts of some other states have determined it in accord with the conclusions above announced. See Love v. Francis, 63 Mich. 181, 29 N.W. 843, 6 Am.St.Rep. 290; Holmes v. McDonald, 119 Mich. 563, 78 N.W. 647, 75 Am.St. Rep. 430; Henderson v. McDonald, 84 Ind. 149; Pruitt v. Pruitt, 91 Ind. 595; Malone's Committee v. Lebus, 116 Ky. 975, 77 S.W. 180; 25 A.L.R. 668; 12 R.C.L. 942. These same authorities also hold that in such cases acceptance by the donee will be presumed, absent a showing to the contrary. To the same effect is the holding of the Supreme Court in Taylor v. Sanford, supra.

And it is manifest we think that the parol evidence admitted by the trial court to show a contemporaneous oral agreement made between B. W. and B. C. Giles, at the time of the execution of said deed would necessarily result in varying by parol the express and unambiguous terms of a written instrument. It therefore comes under the condemnation of the parol evidence rule and should have been excluded. 17 Tex.Jur. 794. There is no contention that there was any fraud, accident, or mistake involved in the transaction.

For the reasons stated, the judgment of the trial court is reversed and the cause remanded.

Reversed and remanded.